THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v* JOHN LEE DORRIS, Defendant-Appellant.

Fourth District   No. 17698

Opinion filed November 30, 1982.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and Garry W. Bryan, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LEWIS delivered the opinion of the court:

After bench trial in the circuit court of Champaign County, defendant was convicted of burglary (Ill. Rev. Stat. 1981, ch. 38, par. 19—1), and sentenced to a five-year term of imprisonment. Defendant appeals the denial of his motion to suppress certain of the State's evidence and his sentence.

We affirm.

The suppression hearing on the evidence in question was held in conjunction with the trial, but only those facts dealing with the propriety of the search will be discussed in detail. On August 7, 1981, at approximately 2:30 a.m., Edna Carson awoke and found an intruder in her house at 1603 West Healey in Champaign, Illinois. The man fled from the house. She described the burglar as "*** a colored man *** wearing either a white or very light blue T-shirt and blue jeans." Carson examined her premises and could not locate her handbag and several other items. She told James Ferdinandsen, the investigating police officer, that the handbag, as well as a teacher's retirement check, two social security checks, and approximately $100 in United States currency were missing. She was upset at that time and could not tell if anything else was missing.

Officer Ferdinandsen was told by Philip Manthei that he observed

a car parked in front of his residence at 1610 West Healey at approximately 2:30 a.m. on August 7, 1981. He saw a black male come from the direction of Carson's house and get in the car. The man was carrying an arm load of "stuff" and a satchel with a long strap. He drove away with the headlights off. Manthei described the car as a two-door, black and white, 1969 or 70 Dodge Dart Swinger "in pretty good condition." It had Mississippi license plates and a CB antenna in the middle of the trunk lid.

Officer Ferdinandsen broadcasted the following description of the car over the police radio: "A black over white Dodge, CB antenna on the back and clean looking." Officers Tracy Jobe and Richard Eaton stopped and arrested the defendant in Champaign at 5 a.m. on August 7, 1981. Defendant was driving a black and white Dodge with Florida license plates. The interior of the car was loaded with clothing and other articles and contained two dogs. It had a CB antenna on the rear trunk. The car was taken into custody, the doors were locked and it was towed to police headquarters.

Officer Gary Wright testified that after his arrest, defendant consented to a search of his automobile and willingly signed a consent to search form. Defendant was told that if he did not give his consent, the police would obtain a warrant anyway, and that it would save time if he would consent. An hour later Officer Eaton arrived with a search warrant. Eaton and Wright then proceeded to search the car.

The warrant itself is not in the record, but the parties agreed at trial that the following items to be seized, from the complaint for the search warrant, are identical with what was contained in the warrant:

> "[A] Teacher Retirement Check issued to Edna Carson, 2 Social Security Checks issued to Edna Carson; One Hundred Dollars in United States Currency; a large Women's handbag containing items of personal property belonging to Edna Carson."

Officer Eaton testified that in the trunk of the car he found a plastic bag of coins in which there was a small, blue, leather coin purse. The purse contained 15 (wheat) pennies and a bank deposit slip. The deposit slip was dated September 1979, had "Champaign National Bank" printed on it, and had an account number on it, but no name. Eaton then called Champaign National Bank and determined that the account number was for the account of Edna Carson. The purse and its contents were then seized.

During subsequent investigation and when brought to her attention, Carson indicated that she had a small, leather coin purse which was missing from her home. The coin purse and its contents were the only items offered at the trial as fruits of the burglary found in the

defendant's possession.

Defendant testified that Officer Wright told him that he would get a faster search if he signed the form consenting to the search of his car. He signed the form, but then told Wright that he did not wish to consent to the search.

The court made the following ruling on defendant's motion to suppress the purse and the bank deposit slip:

"The Court finds there was sufficient probable cause for the arrest and search of the defendant and the automobile in which he was riding pursuant to the automobile exception and that the search warrant wasn't even necessary. But having obtained the search warrant, in the event the Court is incorrect in its first assessment, it's clear that in my judgment, the search was within the scope of the warrant and was not a general search and the items which were seized which are now the subject of the motion, People's Exhibits 1 and 2, the contents of 1, the pennies, were properly seized pursuant to that search warrant. And for the reasons stated, the motion to suppress is denied as [to] People's Exhibit 1 and 2, the pennies."

The trial court also found that the defendant did not consent to the search.

The defendant maintains on appeal that the search and seizure of the purse and bank deposit slip was beyond the scope of the warrant and cannot be justified by the "plain view doctrine." The State contends that the search and seizure was authorized by the warrant, falls within the ambit of the "automobile" exception to the warrant requirement, and in any event, defendant consented to the search by signing the consent to search form. Since we find that the search and seizure was authorized by the warrant and the items were properly seized while in "plain view" during the execution of the warrant, we decline to consider the other grounds under which the search and seizure may have been permissible.

Defendant correctly points out that Carson did not report to the police that a coin purse or a bank deposit slip was missing, and neither item was listed in the search warrant. Defendant therefore concludes that the police had no reason to either seize the items or to make any further inquiry regarding them. Furthermore, the coins in the purse could not justify its seizure because "One Hundred Dollars in United States Currency" lacks the specificity necessary for a search warrant.

Search warrants must particularly describe the things to be seized and the places to be searched. (*Dalia v. United States* (1979), 441

U.S. 238, 60 L. Ed. 2d 177, 99 S. Ct. 1682; *People v. Sovetsky* (1931), 343 Ill. 583, 175 N.E. 844.) The particularity requirement is a safeguard against: (1) the issuance of general search warrants (*Marron v. United States* (1927), 275 U.S. 192, 72 L. Ed. 231, 48 S. Ct. 74; *People v. Elias* (1925), 316 Ill. 376, 147 N.E. 472); the seizure of objects upon the mistaken assumption that a magistrate has given such an authorization (*Marron; People v. Prall* (1924), 314 Ill. 518, 523, 145 N.E. 610, 612); and (3) "the issue of warrants on loose, vague or doubtful bases of facts" (*Go-Bart Importing Co. v. United States* (1931), 282 U.S. 344, 357, 75 L. Ed. 374, 382, 51 S. Ct. 153, 158).

Whether a warrant is sufficiently detailed depends upon the facts of each case. (See *People v. Williams* (1968), 40 Ill. 2d 522, 531, 240 N.E.2d 645, 650; *People v. Curry* (1973), 56 Ill. 2d 162, 172, 306 N.E.2d 292, 297.) Within the purposes of the particularity requirement, among the factors to be considered are: (1) the nature of the items to be seized (*Curry*); and (2) the degree to which the police have provided descriptive facts which reasonable investigation of the crime would reveal. See *People ex rel. Carey v. Covelli* (1975), 61 Ill. 2d 394, 336 N.E.2d 759; *People v. Holmes* (1974), 20 Ill. App. 3d 167, 312 N.E.2d 748.

Upon investigating the burglary in the early morning hours immediately after its occurrence, the police were told by the victim that she was missing her handbag and its contents; three checks, which she described particularly; and approximately "One Hundred Dollars in United States Currency." Currency is a generic term for medium of exchange and includes paper money and coins. (Webster's Third New International Dictionary 557 (1971).) Currency is by its nature fungible and usually a detailed description will not be possible.

Defendant calls to our attention the case of *People v. Holmes* where "an undetermined amount of United States Currency" was held to be insufficiently particular for a warrant authorizing a search of an impounded car. The court suggested a general description of the denominations and an approximate amount of the currency could have been ascertained from the grocery store which was the victim of the robbery in question.

Here, the victim did give the approximate amount of the missing currency. The record is silent as to whether the police made inquiry regarding the denominations of the currency. However, "a fairly general description which includes a reference to the circumstances under which goods were stolen, when that added fact discloses something about the condition or appearance of the goods, will suffice." (2 W. LaFave, Search and Seizure sec. 4.6, at 102 (1978).) We do not have

the actual warrant before us, but the complaint for the warrant contained all of the facts discovered in the initial police investigation and the arrest of the defendant. The complainant, Gary Eaton, was one of the officers who conducted the search, so he was aware of the circumstances in which the money was stolen. The list of items to be seized included the handbag and its contents. This information does give some general indication regarding the probable denominations of the currency and the type of container it might be in.

While even a general statement that missing currency is of mixed denominations or is comprised of paper money and coins is desirable, and might be helpful in determining whether or not currency being examined is likely to have been stolen, we cannot say that in these circumstances the warrant here was insufficiently detailed. "To hold otherwise would be to put a premium on hypertechnical detail as opposed to a realistic, common-sense approach to the constitutional requirements relative to search warrants." *People v. Williams* (1968), 40 Ill. 2d 522, 531, 240 N.E.2d 645, 650.

■ Therefore, we conclude that there were several grounds on which the police could properly search and seize the purse. It was found in a plastic bag which contained currency amounting to $88.90, the approximate amount the victim was missing. Since it had within it 15 pennies, the police knew even before opening it that it contained currency. Finally, a purse is a type of container in which one would expect to find currency. The police were authorized to search the car for currency and they properly inspected the coin purse in conjunction with that search. Since the purse contained currency, was found within the plastic bag which contained the approximate amount of missing currency, and was the type of personal item which one would expect to find in a woman's handbag, it and its contents could have been immediately seized upon its discovery. However, Eaton testified that it was not seized until identification of the bank deposit slip found within it.

Defendant challenges the immediate inquiry made by the police to the bank regarding the account number on the deposit slip. Defendant concedes that the police were lawfully searching the car and could properly seize evidence in "plain view." (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022; *People v. Hamilton* (1979), 74 Ill. 2d 457, 386 N.E.2d 53.) To be seizable, evidence in "plain view" must be: (1) of incriminating character, (2) immediately apparent to the police that it is incriminating, and (3) discovered by the police inadvertently. (*Coolidge.*) Defendant contends that the incriminating nature of the purse and the bank deposit slip

was not readily apparent to the police and therefore not subject to seizure. Furthermore, the police were not justified in making further inquiry about the "innocent seeming" objects in order to discover their incriminating character.

We have already discussed why the police could have been justified in immediately seizing the purse and its contents under the warrant. Some of the same reasons would support further inquiry into the nature of the purse and its contents without relying on the "currency" component of the warrant. The deposit slip was found in a coin purse, and both items are of a type one might expect to find in a women's handbag. The warrant included among the items to be seized "a large women's handbag containing items of personal property belonging to Edna Carson." The automobile in which the purse and deposit slip were found matched the description of the car observed at the scene of the burglary and was impounded shortly after the burglary.

█ It has been suggested that the "immediately apparent" requirement does not prohibit a minimal additional intrusion which results from inspection or examination of an object in plain view, if the officer is aware of some facts and circumstances which, although not constituting probable cause, would justify a reasonable suspicion that the object is, or contains, fruits of a crime. (2 W. LaFave, Search and Seizure sec. 6.7(b) (1978).) Several other jurisdictions have upheld the checking of external identification numbers on an item unnamed by a warrant in circumstances which justified the police having a reasonable suspicion that the item was stolen. *United States v. Hamilton* (D. Del. 1971), 328 F. Supp. 1219; *State v. Legas* (1978), 20 Wash. App. 535, 581 P.2d 172; *Dugan v. State* (1974), 130 Ga. App. 527, 203 S.E.2d 722; *State v. Cernohous* (1973), 295 Minn. 491, 205 N.W.2d 680; *State v. Sagner* (1973), 12 Or. App. 459, 506 P.2d 510; *State v. Turner* (1972), 210 Kan. 836, 504 P.2d 168; but see *United States v. Gray* (6th Cir. 1973), 484 F.2d 352; *Commonwealth v. Hawkins* (1972), 361 Mass. 384, 280 N.E.2d 665.

We have found no similar Illinois cases involving identification numbers. However, in *People v. Christeson* (1970), 122 Ill. App. 2d 192, 258 N.E.2d 142, the Madison County police, armed with a search warrant for a stolen television, entered defendant's residence. The television, located in the dining room, was identified and seized. Officers also observed numerous power tools on the floor of a bedroom which were visible from where the officers were standing. On the previous day, a lumber company in Macoupin County had suffered a burglary in which power tools and office machines had been taken. The officers,

while in the residence, confirmed by telephone conversation with the Macoupin County authorities that the property was similar to that which had been stolen. This court upheld the seizure of the tools. We believe that *Christeson* and similar cases are the logical application of the principle found in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, that a minimal intrusion into a person's privacy may be justified when sufficient grounds exist for a reasonable suspicion, but not for probable cause. This balancing concept has already been applied in Illinois in "warm pursuit" cases holding that since great exigencies often allow for warrantless entries, a "moderate exigency" may justify a more limited intrusion. *People v. Petersen* (1982), 110 Ill. App. 3d 647; *People v. Morrow* (1982), 104 Ill. App. 3d 995, 1004, 433 N.E.2d 985, 992.

Therefore, we hold that when the police have a reasonable suspicion that an item in plain view is stolen property, the minimal additional intrusion of checking external identification numbers is proper. The bank deposit slip and the purse in which it was found was lawfully searched and seized.

■ Defendant also contends that the trial court abused its discretion in sentencing him to five years' imprisonment. At the sentencing hearing the State recommended a three-year term of imprisonment.

Burglary is a Class 2 felony for which defendant could have been sentenced to imprisonment for not less than three years and not more than seven years as provided in section 5—8—1(a)(5) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, pars. 19—1(b), 1005—8—1(a)(5)). Defendant's sentence was within the statutory limits and will not be reduced absent a showing of abuse of discretion on the part of the trial court. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

A prosecutor's sentencing recommendation is not binding on the court. *People v. Pahlman* (1977), 51 Ill. App. 3d 879, 366 N.E.2d 1090.

Defendant had a history of prior delinquency and criminal activity which is a factor which weighs in favor of the imposition of a severe sentence as provided in section 5—5—3.2 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2). Defendant was adjudicated a delinquent in July 1974, after a finding that he committed three counts of the offense of burglary. Defendant was readjudicated a delinquent in April of 1975 after having committed an additional burglary. In 1976 defendant was convicted of felony theft and in 1980 of attempted burglary. While on parole defendant received six discipline referrals and violated his parole by illegally pos-

sessing cannabis.

While the court also found some mitigating factors, we cannot say that the sentence imposed was an abuse of discretion.

Affirmed.

GREEN, P.J., and MILLS, J., concur.