OPINION OF THE COURT
Mario F. Mattei, J.
In the case before this court, the police made a plain view observation of incriminating evidence inside the defendant’s vehicle prior to arresting her for driving while intoxicated. Rather than effecting a contemporaneous seizure of the evidence, the arresting officer waited to do so until the following morning when he returned to the vehicle to retrieve and voucher the items. During the interval between the defendant’s arrest and the subsequent seizure of the evidence the defendant’s vehicle, with the evidence still inside, was left on a public street unsecured by police presence.
At issue is whether the officer’s warrantless retrieval of the incriminating items from the defendant’s vehicle was justified on the basis of his initial plain view observation.
It is the opinion of this court that once the police have relinquished dominion and control over an automobile they are required to obtain a warrant in order to retrieve evidence therefrom, even though the evidence may have been initially seized lawfully under the plain view or other recognized exceptions to the warrant requirement. While there has never been any requirement that the police must do all their searching promptly upon a plain view observation of incriminating evidence, an unauthorized seizure may not be justified by a delayed search (People v Brosnan, 32 NY2d 254 [1973]). Accordingly, a warrant-less seizure may not necessarily be predicated upon an earlier plain view observation of the subject evidence.
A central tenet of the Fourth Amendment of the United States Constitution is that warrantless searches are per se unreasonable, subject only to a few specifically established and well delineated exceptions (Katz v United States, 389 US 347 [1967]; Coolidge v New Hampshire, 403 US 443 [1971]; Arizona v Gant, 556 US 332 [2009]). Among these recognized exceptions is a law enforcement official’s plain view observation of evidence associated with criminal activity. Pursuant to the plain view doctrine, an item may be seized without a warrant if three conditions are met: (1) the police are lawfully in a position from which they *766 view an object; (2) the incriminating character of the object is immediately apparent; and (3) the officers have a lawful right of access to the object (People v Diaz, 81 NY2d 106 [1993]; Arizona v Hicks, 480 US 321 [1987]).
The issue has arisen in the context of the defendant’s motion to suppress her arrest and the ensuing recovery of the incriminating evidence. The defendant Iryna Tashbaeva is charged with two counts of operating a motor vehicle while intoxicated (Vehicle and Traffic Law § 1192 [2], [3]). On August 30, 2011, this court held a Mapp/Ingle/Huntley hearing in relation to evidence allegedly obtained from the defendant with regard to those charges. At the hearing, the arresting officer Jose Tabora testified as the sole witness for the prosecution. The underlying facts as recited in this decision are drawn from his testimony.
On April 12, 2011, at approximately 10:00 p.m., Officer Tabora was driving an unmarked car accompanied by three other officers. While heading southbound on Richmond Avenue, the officers noticed a white Chrysler being driven in an erratic and reckless manner, in that the vehicle was swerving from lane to lane without warning. After several attempts to stop the Chrysler, the police ultimately managed to do so but not until it nearly collided with their unmarked car. Officer Tabora then approached the vehicle where he observed the defendant, who was the sole occupant of the car, in the driver’s seat. The officer observed that the defendant exhibited the physical manifestations of intoxication, i.e., bloodshot eyes, slurred speech, and an odor of alcohol on her breath. While the defendant was still seated in the car, the officer made a plain view observation of a partially filled bottle of cognac bearing a Courvoisier label and a “Sprite” bottle on the center console inside the defendant’s vehicle. After the defendant complied with the officer’s request to step out of the car, she was placed under arrest and transported to an intoxicated driver testing unit. The officer did not seize or voucher either of the two bottles at the time of the defendant’s arrest. Moreover, defendant’s vehicle was not taken into police custody. Instead, the vehicle was left on Richmond Avenue at the site where it had been stopped, still containing the cognac and soda bottles.
The following morning, after meeting with an assistant district attorney to draw up the criminal complaint, Officer Tabora returned to the site of the vehicle on Richmond Avenue and retrieved the two bottles. At this time, based upon its odor, he determined that the Sprite bottle contained a mixed alcoholic *767 beverage. The exact length of time between the defendant’s arrest and Officer Tabora’s retrieval of the bottles has not been established, but a fair approximation would be between 8 to 10 hours.[1]
It is well established that the police may seize contraband, evidence or instrumentalities of a crime when these items are in open view and the officer makes his observations from a lawful vantage point (People v Spinelli, 35 NY2d 77 [1974]; People v Diaz, 81 NY2d 106 [1993]). Under the plain view doctrine the police may seize items seen inside a vehicle during an investigative stop if they were justified in stopping the vehicle (People v Harvey, 245 AD2d 108 [1st Dept 1997], lv denied 92 NY2d 898 [1998]). Officer Tabora’s observation of the defendant’s reckless operation of her automobile provided reasonable suspicion that the defendant had committed a violation of the Vehicle and Traffic Law and, therefore, it is without question that there was a justifiable basis for stopping the defendant’s vehicle. (See People v Ingle, 36 NY2d 413 [1975].) However, in order for evidence to fall within the plain view exception to the warrant requirement, there must be probable cause to believe that it is connected to criminal activity (United States v Feliz, 657 F Supp 2d 364 [ED NY 2009]; Illinois v Andreas, 463 US 765 [1983]). Moreover, the incriminating nature of the evidence must be readily apparent (United States v Jenkins, 876 F2d 1085 [2d Cir 1989]).
Had a warrantless seizure of the cognac bottle occurred contemporaneously with or in proximate time to the defendant’s arrest, it clearly would have been justifiable under the plain view exception because its incriminating nature was readily apparent by its being an identifiable alcoholic beverage. The readily apparent criminal nature of the Sprite bottle, however, is more problematic since a soft drink bottle is an inherently innocuous object lacking apparent indicia of criminal activity. The alcoholic content, and thus incriminating nature, of the Sprite bottle was determined at the point when Officer Tabora returned to the defendant’s vehicle the following day and presumably opened the bottle.[2] Arguably, its seizure at the time of defendant’s arrest might not have satisfied the require- *768 merits of the plain view doctrine. However, even assuming that its connection to criminal activity was not readily apparent, pursuant to the holding in Arizona v Gant (556 US 332 [2009]), the warrantless seizure of the Sprite bottle (as well as the bottle of cognac) would have been permissible.
In Arizona v Gant the United States Supreme Court held that “circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.” (Gant, 556 US at 335.)[3] The Court further held that “[p]olice may search a vehicle incident to a recent occupant’s arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest” (Arizona v Gant, 556 US at 351 [emphasis supplied]).
The Court addressed the impact of this holding, which created a new rule for automobile searches, upon its previous rulings regarding a search incident to arrest in automobile cases.
In Chimel v California (395 US 752 [1969]), the Court held the police may search incident to arrest only the space within an arrestee’s “immediate control,” meaning the “area from within which he might gain possession of a weapon or destructible evidence.” (Chimel at 763.) In New York v Belton (453 US 454 [1981]) the Supreme Court held that a search incident to arrest can extend to any part of the passenger compartment of an automobile including open or closed containers, glove compartments, consoles and luggage. (See Kamins, New York Search and Seizure § 5.05 [2] n 77 [2011].) Belton allowed for a search of the passenger compartment of a vehicle as well as a search of all containers therein incident to the arrest of a recent occupant even if there is no possibility that the arrestee could gain access to the vehicle at the time of the search. (Arizona v Gant, 556 US at 341.) Gant has now placed significant limitations on the interpretation of Belton and raised questions as to the legality of searches conducted pursuant to Belton where the safety of law enforcement is not in issue. Thus, the Court reaf *769 firmed its holding in Chimel that a search incident to arrest is valid when the arrestee is unsecured and within reaching distance of the passenger compartment and limited the instances in which Belton will justify searches incident to arrest. The hallmark of Gant however is that the Supreme Court also enunciated a new automobile exception which permits an officer to search the passenger compartment when there is reason to believe that evidence relevant to the underlying arrest might be found in the passenger compartment irrespective of whether the defendant has been secured or whether that evidence is within the defendant’s reach.
In this case, the presence of the Sprite bottle on the vehicle’s center console, the same location where the cognac bottle was observed, coupled with the officer’s observation of the defendant’s erratic driving and exhibition of the physical manifestations of intoxication could have given rise to a reasonable suspicion that the bottle contained an alcoholic beverage. In an arrest for driving while intoxicated this suspicion would also extend to any container which is capable of holding a liquid since, as demonstrated here, alcoholic beverages are often contained in and drunk from items such as cups, thermoses, cans and bottles which do not contain an obvious alcohol label. Accordingly, had the Sprite bottle been retrieved at or near the time of the defendant’s arrest, its warrantless seizure would have been permissible.
Having determined that warrantless seizures of the two bottles would have been permissible under different exceptions had the seizure taken place at or near the time of the defendant’s arrest, the court now considers how the lapse of time between the officer’s initial observation and the subsequent retrieval of the bottles impacts the legitimacy of the search.
This court has been unable to find any cases where there was a delay in the retrieval of evidence that was initially observed in plain view inside the passenger compartment of an automobile and where the vehicle and evidence at issue was not subject to continuous police custody. Therefore, this court’s analysis has been guided in large part by holdings made in an analogous situation — cases in which the police made an initial justifiable warrantless search of a crime scene under exigent circumstances but where intervening factors caused a delay in the completion of that search.
In instances where incriminating evidence falls within the ambit of the plain view exception to the warrant requirement, *770 the exception does not extend to its subsequent warrantless seizure where the evidence has not been secured by a continuous police presence.
The concept of an unlimited ongoing crime scene exception to the warrant requirement has been rejected by the United States Supreme Court (see Flippo v West Virginia, 528 US 11 [1999]; Mincey v Arizona, 437 US 385 [1978];[4] Kamins, New York Search and Seizure § 4.03 [3] [f] [2011]). Therefore, “when a constitutionally protected area becomes the scene of a crime, the police may subject the premises to a preliminary search and inspection whose scope and duration must be limited by and reasonably related to the exigencies of the situation.” (People v Cohen, 87 AD2d 77, 82-83 [2d Dept 1982], affd 58 NY2d 844 [1983].) During such preliminary inspection of the premises, the police may seize evidence or contraband that is in plain view (Flippo v West Virginia, 528 US 11 [1999]). However, “[o]nce [this] preliminary investigation has come to an end ... no further searches for evidence may be conducted on the premises unless authorized by a warrant.” (People v Cohen, 87 AD2d at 83.)
The admissibility of evidence discovered during warrantless searches at crime scenes has arisen primarily in connection with the exigent circumstances doctrine, where the initial police entry onto the premises was justifiably predicated upon an emergency situation. The novel question in the case before this court is the permissible scope and duration of the search of an automobile where the incriminating evidence was initially observed in plain view but was not immediately retrieved. For the same reasons articulated in Flippo and Mincey, this court rejects the concept of an ongoing crime scene exception to the warrant requirement as it relates to the search of motor vehicles in circumstances where the preliminary investigation has been completed and the vehicle has not been in continuous police custody.
This view is in accord with several other cases involving crime scene searches.
In People v Neulist (43 AD2d 150 [2d Dept 1973]), the police responded to a call from the defendant’s stepson in which he *771 reported that he had found his mother dead in her bedroom. When they arrived at the scene, the police made a preliminary determination that the decedent had died from natural causes. Thereafter, most of the officers who had responded to the initial call left the house while several others remained at the scene for the purpose of securing the decedent’s bedroom. Within an hour of the departure of most of the officers, authorities notified the police that, in fact, the decedent had been shot. Several detectives then returned to the house and conducted a warrant-less search during which incriminating evidence was discovered and seized. In upholding the admissibility of the evidence seized in the course of the warrantless search the Appellate Division held “[t]he crucial elements [were] the posting of the guard, thereby establishing a continuing police presence on the scene, and the relatively brief lapse of time between the removal of the body and the continuation of the investigation.” (People v Neulist, 43 AD2d 150, 155.) The court also noted that as the search progressed the officers applied for and obtained four search warrants.
In People v Dancey (84 AD2d 763 [2d Dept 1981], affd 57 NY2d 1033 [1982]), the defendant called the police to report that she was locked out of her apartment and that her baby, who was inside the apartment, had been placed in a plastic bag. At the defendant’s request, the police broke into the apartment and found the baby, who died shortly thereafter. Initially, the defendant accused her husband of having placed the baby in the bag. A police officer was posted to the apartment to safeguard the crime scene while the defendant accompanied the officers to the local precinct. At the precinct, the defendant admitted to having placed the baby in the bag. While the police guard was still in the apartment, a detective entered the premises “not to search . . . [but] to better view the physical layout” of the crime scene (see Dancey, 84 AD2d at 763). While in the apartment the detective saw, in plain view, a letter on a dresser addressed to the defendant’s husband. The letter contained statements implicating the defendant in her baby’s death. The Appellate Division upheld the search stating,
“The detective was not there to search the premises, nor to gather evidence . . . He did not find the note pursuant to a search. It was in plain view. Since the police presence in the apartment was a legitimate response to the exigent need to safeguard the crime scene, and the detective’s appearance and activities *772 did not exceed the ambit of that presence, the detective had the right to seize evidence in plain view.” (People v Dancey, 84 AD2d at 764.)
In People v Cohen (87 AD2d 77 [2d Dept 1982], affd, 58 NY2d 844 [1983]) the Court used the same standard expressed in Neulist and Dancey and suppressed evidence recovered in a crime scene search. In Cohen the police received a call reporting that someone had been shot inside an apartment shared by the defendant and her husband. The police arrived at the apartment at approximately 11:45 p.m. and discovered the husband lying in bed with an apparent gunshot to the head. The defendant informed the police that her husband had shot himself. By 3:00 a.m. the last officers to have arrived on the scene left the apartment. The following morning the medical examiner’s office notified the police that the nature of the decedent’s wounds raised suspicion that his death was the result of a homicide. Several hours later, at approximately 10:30 a.m. that day, the police returned to the apartment and conducted a warrantless search which resulted in the discovery of incriminating evidence. The court disallowed the search holding that once a preliminary investigation has come to an end no further warrant-less searches for evidence may be conducted. The court also noted that the premises had not been secured by a police presence from the time of their 3:00 a.m. departure until their return at 10:30 a.m.
It is notable that in the case before this court the interval of time during which the defendant’s vehicle was left unattended on Richmond Avenue closely corresponds to the length of time during which the crime scene in People v Cohen (supra) remained unsecured by a police presence. The common thread in the cases which allowed the delayed retrieval of evidence, and which was absent in Cohen and the instant case, was a continuous police presence in connection to the crime scene. Once there is an interruption in their control and custody of a crime scene the police are required to obtain a warrant in order to retrieve any evidence therefrom.
Mindful of the automobile exception, which often allows the warrantless seizure of an automobile itself due to its inherent mobility, and that the incriminating evidence in the instant case was observed in plain view during the preliminary investigation, the court nonetheless holds that the officer’s previous plain view observation of the bottles did not provide the predicate for a warrantless seizure on the following day. Critical to *773 this finding is the fact that the vehicle remained unsecured by a police presence during the entire interval between defendant’s arrest and the seizure, the lapse of time between the plain view observations and the seizure of the bottles and the absence of any exigent circumstances. Indeed, a contrary ruling allowing seizure would lead to the untenable conclusion that the police could stop and/or seize the defendant’s vehicle after they realized the value of the evidence they left behind, even if another person was observed driving it or if it had been moved to the defendant’s home by a friend or relative, and then proceed to search the car anew. Additionally, there was no impediment to Officer Tabora’s ability to obtain a warrant since he had been to the District Attorney’s office and met with an assistant district attorney before returning to Richmond Avenue to secure the evidence.
In summary, this court concludes that Officer Tabora’s previous plain view observation of the bottles did not provide the predicate for their warrantless seizure on the following day.
Accordingly, the fruits of Officer Tabora’s search, namely the cognac and Sprite bottles must be suppressed.

. The defendant was arrested at approximately 10:21 p.m. Officer Tabora testified that he returned to the defendant’s car and retrieved the two bottles the following morning.

. Officer Tabora never expressly testified that he had opened the Sprite bottle, although presumably he would have had to have done so in order to *768 determine that it contained a mixed alcoholic beverage.

. In Arizona v Gant the defendant was arrested for driving with a suspended license. While the defendant was handcuffed and locked in the back of a patrol car, the officers searched his car and discovered cocaine in the pocket of a jacket on the back seat. There was no connection between the reason for the defendant’s arrest and the evidence that was recovered. Accordingly, the U.S. Supreme Court affirmed the Arizona Supreme Court’s holding that this constituted an unreasonable search.

. In Mincey, immediately following a shootout in which an undercover officer was killed, the police made a justifiable warrantless entry onto the crime scene. However, after securing the premises, the police proceeded to conduct a thorough four-day long warrantless search of the crime scene. The Supreme Court held that any evidence found after a crime scene has been secured must be predicated upon a properly authorized warrant.