4 F.3d 987
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony Haywood MCNEIL, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Darryl Leonard Boyd, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
John Crenshaw, III, Defendant-Appellant.
 Nos. 92-5421, 92-5422, 92-5448.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 11, 1993.
Decided: September 7, 1993.
 
 Appeals from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CR-91-22-R)
 Andrew Scott Goldstein, Magee, Foster, Goldstein & Sayers, Roanoke, Virginia, for Appellants.
 Donald Ray Wolthuis, Assistant United States Attorney, Roanoke, Virginia, for Appellee.
 Neil E. McNally, Kay & Tatel, Roanoke, Virginia; Daniel L. Crandall, Law Offices of Daniel L. Crandall, P.C., Roanoke, Virginia, for Appellants.
 E. Montgomery Tucker, United States Attorney, Daniel J. Munroe, Law Intern, Roanoke, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before NIEMEYER and WILLIAMS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 This appeal presents the question of whether a law enforcement officer violated appellants' Fourth Amendment rights when the officer picked up a motel key from the rear seat of a motor vehicle during a consensual search. The officer read the motel name and room number from the key, leading to the discovery of evidence that ultimately supported the appellants' illegal drug convictions. Having carefully reviewed the record, we conclude that appellants' rights were not violated and affirm the convictions.
 
 
 2
 Anthony McNeil, Darryl Boyd, and John Crenshaw pled guilty to possession of cocaine with intent to distribute after the district court denied their motion to suppress inculpatory evidence seized from a motel room in Roanoke City, Virginia. In their plea agreement, they reserved the right to appeal the court's ruling on the suppression motion.
 
 
 3
 On February 5, 1991, Roanoke City police officers observed an Isuzu Trooper four-wheel drive vehicle with New Jersey license plates park in the middle of a block and its three occupants exit, walking in "staggered" manner, several feet apart from each other toward the next intersection, even though parking spaces were available closer to the direction they were proceeding. The area was known to the officers to be the worst site for violence and drug distribution in Roanoke, and New Jersey was known to them to be a source state for drugs. As the three occupants, who are the appellants here, exited from the vehicle, one of the officers recognized Darryl Boyd from past encounters. The officer believed Boyd to be involved in the distribution of illegal drugs based on those encounters and information received from informants. The officers approached the three men, identifying themselves, and asked whether they could talk to the three after searching them for weapons. The three men agreed. The officers then asked who owned the vehicle and Anthony McNeil, who had been driving, responded that the vehicle belonged to his cousin (although it later turned out to be a rented vehicle). The officers asked for their names and McNeil produced a false identification and Crenshaw gave a false name. Boyd recognized one officer and gave his correct name. The three were advised that they were not under arrest. When asked where they were going, they said they were visiting a relative but the location which they gave was in the opposite direction from that in which they were walking. When the officers asked to search the vehicle for weapons and drugs, the three men gave their consent.
 
 
 4
 During the search of the Isuzu, one of the officers found a key to room 16 at the Apple Valley Motel on the back seat of the vehicle where Boyd had been sitting. When the officer held up the key, McNeil "physically grabbed it" out of the officer's hand, saying "that's Charles' key." McNeil explained that Charles was a friend who was out of town. When the officer asked if any of the three had any property in the motel room, they said no. The officer took the key back from McNeil and told them, "If they had no property there then I would return the key to the manager." The three became nervous and asked if they could go. When they were told they could, the three reentered the Isuzu vehicle and "took off very fast." The officers became yet more suspicious and followed, attaining speeds of 75-85 miles per hour to keep the Isuzu in sight. The appellants pulled into the Apple Valley Motel in front of room 16, and Boyd exited and walked to the manager's office while McNeil walked to the room and tried to open the door. When McNeil and Boyd observed the officers again, they began walking away from the motel to the street. When asked by the officers why the three were in such a hurry, McNeil said, "I was just seeing if Charles was here. I was going to tell him you took the room key."
 
 
 5
 The officers checked the registration for room 16 with the motel manager and discovered that it was registered to Carol Brown of Patterson, New Jersey. The motel manager also told the officers that he recognized McNeil and Crenshaw because they had been going in and out of room 16. Since Carol Brown was not there and the three disclaimed knowledge of the room or any property in it, the officers asked the manager if they could look inside. The manager agreed and the search produced 184 containers of crack cocaine and $1,430 in cash. The evidence was ultimately linked to the appellants, leading to their indictment and conviction.
 
 
 6
 On motions to suppress the evidence based on the fact that the motel key was illegally seized, the district court found that the search of the vehicle was consensual and that the officers had a right to pick up the key and turn it over, reading the information on it. The court concluded, however, that the officers had no probable cause to seize the key. Notwithstanding the illegal seizure, the court concluded that the information on the key was discovered within the scope of the consensual search, and it was that information that ultimately led the officers to the motel and discovery of the illegal drugs. The court therefore denied the motion.
 
 
 7
 On appeal the appellants do not contest any of the factual findings by the district court, but they contend that the seizure of the key was illegal because the key was not contraband nor did it suggest illegal conduct, citing Coolidge v. New Hampshire, 403 U.S. 443 (1971). They contend that "if an item [such as the key] must be moved even slightly to ascertain its incriminating nature ... the seized item[ ] must be excluded from evidence," citing Arizona v. Hicks, 480 U.S. 321 (1987). The appellants argue that because the information about the motel room was obtained as a result of an illegal seizure of the key, all of the evidence discovered at the motel must therefore be suppressed.
 
 
 8
 The appellants fail, however, to take account in their argument the limitation that the protections afforded by the Fourth Amendment apply only to searches and seizures of the defendants or their property which go beyond the bounds of their consent. In United States v. McFarley, 991 F.2d 1188, 1191 (1993), we observed:
 
 
 9
 When a private citizen voluntarily consents to interrogation or a search by police officers, however, he cannot later claim, when criminal conduct is uncovered, that his Fourth Amendment rights were violated. See Florida v. Bostick, U.S.,, 111 S. Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); Florida v. Royer, 460 U.S. 491, 497, 103 S. Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). While consent generally has its limits, a consensual search or seizure within those limits does not implicate constitutional rights. But once consent is withdrawn or its limits exceeded, the conduct of the officials must be measured against the Fourth Amendment principles. See Bostick, # 6D6D 6D# U.S. at, 111 S. Ct. at 2386.
 
 
 10
 Moreover, when defendants disclaim ownership in property, they relinquish any expectation of privacy which otherwise might attach. See United States v. Washington, 677 F.2d 394 (4th Cir.), cert. denied, 459 U.S. 854 (1982); United States v. Williams, 538 F.2d 549, 550-51 (4th Cir. 1976).
 
 
 11
 Applying these principles to the facts found by the district court in this case, if appellants' consent to search the Isuzu did not extend to picking up and reading information from the key that lay on the back seat, their disclaimer of any interest in the key constitutes a relinquishment of any privacy interest in the key. When appellants stated that the key belonged to Charles and appellants owned no property at the motel room connected with the key, the officers volunteered to return the key to the motel manager. At this point, none of the appellants protested or attempted to assert any legal interest in the key or the motel room itself. In these circumstances, we conclude that the district judge did not err in refusing to suppress the evidence later derived from information provided by the key.
 
 
 12
 The appellants also challenge as improper the post-arrest inventory search of the Isuzu which yielded an additional quantity of "crack" cocaine. That search, however, was conducted according to department procedures for impounding a vehicle pursuant to the arrest of its occupants, and was therefore valid. See Colorado v. Bertine, 479 U.S. 367, 371-72 (1987); South Dakota v. Opperman, 428 U.S. 364, 36776 (1976).
 
 
 13
 Finally, the appellants contend that statements made to the police by McNeil and Crenshaw following their arrest should have been suppressed because neither man was first informed of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Miranda warnings are only necessary, however, prior to custodial interrogation. Id. at 477-78. As the appellants themselves admit, the statements made to the police were voluntary, and therefore the requirements of Miranda were not implicated. Id. at 478.
 
 
 14
 Accordingly the convictions of the appellants are affirmed.
 
 AFFIRMED