13 F.3d 421
 304 U.S.App.D.C. 298
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee,
v.
Waddell Junior ROBINSON, Defendant-Appellant.
 No. 92-3173.
 United States Court of Appeals, District of Columbia Circuit.
 Dec. 1, 1993.
 
 Before WALD, BUCKLEY, and GINSBURG, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal was heard on the record from the United States District Court for the District of Columbia and was argued by counsel. On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED by the court that the ruling of the District Court is affirmed for the reasons set forth in the attached memorandum.
 
 MEMORANDUM
 
 3
 Appellant Waddell Junior Robinson appeals from a ruling of the district court in which Judge Joyce Hens Green declined to suppress evidence seized from Robinson's car. For the reasons outlined in this memorandum, we affirm the ruling of the district court.
 
 I. BACKGROUND
 
 4
 On the afternoon of January 3, 1992, Officers Christopher Archer and Christopher Jackson were engaged in routine narcotics enforcement in the northwestern quadrant of the city. Both officers were dressed in plain clothes and were driving Archer's personal automobile.
 
 
 5
 The officers' testimony, which Judge Green credited in its entirety, indicates that they approached a woman at the corner of Kalorama and Ontario Roads, identified themselves as police officers, and stated that they were conducting a narcotics investigation. The woman quickly responded "You don't want me. He's the one you want," and pointed up the road in the direction of Robinson. One of the officers replied that he didn't understand her comment. She again pointed at Robinson, this time saying "You don't want me. He's the one that has the shit on him." The officers testified that they understood this comment to mean that Robinson had illegal drugs on him.
 
 
 6
 The officers then watched as Robinson got into his car and drove past them, heading westbound on Kalorama Road. They decided to follow. Robinson turned onto Champlain Street and ran a stop sign in the process. He then turned into the parking lot of an auto repair shop. The officers parked behind him. Robinson got out of his car and began to approach the officers. Archer identified himself as a police officer and, in response to Robinson's questions, indicated that they were stopping him for a traffic violation.
 
 
 7
 As this was going on, Jackson approached Robinson's car. He proceeded to look into Robinson's car and observed a ziplock bag partially wrapped in yellow tissue paper that contained numerous smaller ziplock bags and that was protruding from underneath a portion of carpet that had been pulled away from the driver's side floorboard. Jackson testified that he had seen such ziplock bags on "thousands" of occasions during his career as a police officer and that they were invariably used to package crack cocaine. Jackson therefore believed that he was observing contraband material and seized the ziplock bag. It turned out to contain approximately six grams of crack cocaine.
 
 
 8
 Robinson was charged with unlawful possession with intent to distribute cocaine base in violation of 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(B)(iii). Prior to trial he moved to suppress the evidence on the ground that its seizure violated the Fourth Amendment. Judge Green denied the motion on the ground that Officer Jackson was lawfully in the place from which he observed the contraband and that given the tip from the woman and the connection between small bags and crack cocaine packaging, he had probable cause to seize the drugs as contraband.
 
 
 9
 Following the denial of his suppression motion, Robinson entered a conditional guilty plea and was thereupon sentenced to sixty months incarceration and four years of supervised release and was charged a special assessment of $50. He now appeals from the denial of the motion to suppress.
 
 II. ANALYSIS
 
 10
 The Supreme Court has clearly stated that two requirements must be met for a plain view search to be valid: the police officer must lawfully be in the position from which he observes the seized object and the contraband nature of the seized object must be immediately apparent. See Horton v. California, 496 U.S. 128, 136-37 (1990). Although "inadvertence is a characteristic of most legitimate 'plain-view' seizures, it is not a necessary condition." Id. at 130.
 
 
 11
 Therefore, we must first assess whether Officer Jackson was legally entitled to be in the place from which he observed the ziplock bag that contained the drugs. As the Supreme Court has observed, "[t]here is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." Texas v. Brown, 460 U.S. 730, 740 (1983) (plurality opinion); see also United States v. Rascon-Ortiz, 994 F.2d 749, 754 (10th Cir.1993) (noting that "there is no legitimate expectation of privacy in a car's interior if an officer looks through the car's window and observes contraband in plain view"); United States v. Head, 783 F.2d 1422, 1426-27 (9th Cir.1986) (holding that the Fourth Amendment was not violated when a police officer shaded his eyes and peered into defendant's van).
 
 
 12
 Robinson seeks to distinguish this line of cases by arguing that because Archer intentionally looked into the car, he invaded Robinson's privacy, and thereby violated the Fourth Amendment. In other Fourth Amendment contexts, police officers have been permitted intentionally to look for objects that, if discovered inadvertently, would establish probable cause. See, e.g., California v. Ciraolo, 476 U.S. 207, 212-14 (1986) (holding that the police did not violate the Fourth Amendment when they intentionally flew over defendant's home in an attempt to see if marijuana plants were growing in the back yard). If an individual does not have an expectation of privacy in something, then the Fourth Amendment is not implicated regardless of whether that something is viewed inadvertently or intentionally. Cf. Rascon-Ortiz, 994 F.2d at 754 ("An officer may shift his position to obtain a better vantage point without transforming a visual inspection into a search, even though the agent's purpose is to look for contraband."). In other words, whether an individual possesses a reasonable expectation of privacy in an object or place depends not upon the subjective state of mind of the person observing it but rather upon the nature of the object or place and the individual's relation to it. Cf. Katz v. United States, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."). Therefore, we reject appellant's contention that the actions of Officer Jackson in question here became an invalid search because they were precipitated by his intentionally looking into the car.
 
 
 13
 Robinson also challenges the actual seizure of the drugs, arguing that because only empty ziplock bags were exposed to view, it was not immediately apparent to the officers that the object was contraband. Whether it is "immediately apparent" to a law enforcement official that an object is contraband is judged under a probable cause standard. Arizona v. Hicks, 480 U.S. 321, 326-27 (1987). Therefore, as in other circumstances, we must determine whether, under the totality of the circumstances known to the officer at the time he made the seizure, he had reason to believe that the object was probably contraband.
 
 
 14
 In this case, three specific facts were known to the officer. First, he observed a large ziplock bag that contained numerous smaller ziplock bags. In his experience, this observation suggested crack cocaine packaging. As we have held before, probable cause determinations in situations such as this may be based upon the conditional probability that the occurrence of one event indicates the likely occurrence of a second event. See United States v. Prandy-Binett, 995 F.2d 1069, 1070-71 (D.C.Cir.1993). Hence, Officer Jackson was entitled to take into account the high probability that small ziplock bags, which have few obvious legitimate uses and which are often used to package illegal narcotics for sale, indicated the presence of drugs.
 
 
 15
 Second, Jackson was entitled to take into account that Robinson had apparently attempted to hide the material under the carpet of his car. Again, this increased the likelihood that he was observing contraband.
 
 
 16
 Finally, the two officers had received a specific albeit casual tip that Robinson was carrying drugs. In this context, Officer Jackson's observation of other facts that were indicative of drug possession made it even more probable that he was observing illegal drugs.
 
 
 17
 In the light of these three factors, viewed together, we conclude that Officer Jackson had probable cause to believe that the exposed ziplock bag contained illegal drugs. Therefore, he was entitled to seize the bag.
 
 III. CONCLUSION
 
 18
 For the foregoing reasons, we hold that the seizure of the bag from appellant Waddell Junior Robinson's car was consistent with the plain view doctrine. The ruling of the district court is therefore
 
 
 19
 Affirmed.