BILL LOCKYER Attorney General ANTHONY S. DA VIGO Deputy Attorney General
THE HONORABLE CATHIE WRIGHT, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
May school administrators at a public high school implement a policy requiring on an unannounced, random, and neutral basis that (1) pupils be directed to vacate their classrooms and leave behind their personal belongings, including backpacks, purses, jackets, and outer garments, for sniffing by canines trained in the detection of drugs, (2) the pupils would proceed to a location not within the immediate vicinity of the canines and would remain away from the canines at all times, and (3) if a canine's behavior indicated the presence of drugs, the pupil's personal belongings would be searched by the school administrators without the pupil's consent?
 CONCLUSION
School administrators at a public high school may not implement a policy requiring on an unannounced, random, and neutral basis that (1) pupils be directed to vacate their classrooms and leave behind their personal belongings, including backpacks, purses, jackets, and outer garments, for sniffing by canines trained in the detection of drugs, (2) the pupils would proceed to a location not within the immediate vicinity of the canines and would remain away from the canines at all times, and (3) if a canine's behavior indicated the presence of drugs, the pupil's personal belongings would be searched by the school administrators without the pupil's consent.
 ANALYSIS
We are asked whether a school's random investigation of drugs contained in pupils' personal belongings, using dogs to sniff the belongings outside of the pupils' presence, followed by a search of any belongings to which the dogs reacted, would be permissible under theFourth Amendment of the federal Constitution and the privacy guarantee of the California Constitution. We conclude that the proposed random detection program would not survive constitutional scrutiny.
The Fourth Amendment to the Constitution of the United States provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." The Amendment "protects people from unreasonable government intrusions into their legitimate expectations of privacy." (United States v. Chadwick (1977) 433 U.S. 1, 7.) Ordinarily, a judicial warrant issued on probable cause is necessary to render either a search or seizure of one's person or possessions reasonable. (United States v. Place (1983) 462 U.S. 696, 701.)[1] This right of personal security is inherent in the concept of due process, and therefore applies as well to state officers, including public school officials, through theFourteenth Amendment. (Vernonia School Dist. 47J v. Acton (1995) 515 U.S. 646, 652; Elkins v. United States (1960) 364 U.S. 206, 213; 80 Ops.Cal.Atty.Gen. 354, 355 (1997).)
Section 1 of article I of the California Constitution, as amended by the 1972 "privacy initiative," provides: "All people are by nature free and independent and have inalienable rights. Among these are . . . pursuing and obtaining safety, happiness, and privacy." Quoting directly from the ballot argument in favor of the 1972 initiative, the court in White v. Davis (1975) 13 Cal.3d 757, 774-775, observed:
 "`. . . The right of privacy is the right to be left alone. It is a fundamental and compelling interest. It protects our homes, our families, our thoughts, our emotions, our expressions, our personalities, our freedom of communion, and our freedom to associate with the people we choose. . . .
 "`. . . The right of privacy is an important American heritage and essential to the fundamental rights guaranteed by the First, Third, Fourth, Fifth
and Ninth Amendments to the U.S. Constitution. This right should be abridged only when there is a compelling public need. . . .'"[2]
Special Fourth Amendment standards apply to pupils in the public schools. Although, as is frequently observed, public school students do not "shed their constitutional rights . . . at the schoolhouse gate" (Tinker v. Des Moines Indep. Sch. Dist. (1969) 393 U.S. 503, 506), because of the school's custodial and educational responsibilities, public school pupils are legitimately subject to "a degree of supervision and control that could not be exercised over free adults" (Vernonia School Dist. 47J v. Acton, supra, 515 U.S. at pp. 655-656), and public school pupils consequently enjoy a "`lesser expectation of privacy than members of the population generally'" (id., at p. 657).
Thus, the United States Supreme Court has concluded that while public school officials are generally subject to Fourth Amendment constraints, they are not required to obtain a warrant or possess probable cause as a prerequisite to a search or seizure of pupils' belongings, provided that their actions are based on reasonable suspicion of proscribed activity, and the actions taken in response thereto are reasonable in light of the needs and interests of the school administrators and the justifiable privacy expectations of the students. (New Jersey v. T.L.O. (1985)469 U.S. 325, 337-343.)
Initially, we note that the procedures proposed would not involve any contact between the drug-sniffing dogs and the pupils themselves, all of whom would be absent from the area in which the dogs would be located. If the pupils were in the same location as the dogs, additional and different considerations would require our examination. (See B.C. v. Plumas Unified Sch. Dist. (9th Cir. 1999) 192 F.3d 1260, 1271; Horton v. Goose Creek Ind. Sch. Dist. (5th Cir. 1982) 690 F.2d 470, 478-479; Doe v. Renfroe (7th Cir. 1981) 631 F.2d 91, 92.)
The types of personal property that students may typically bring to school were described by the United States Supreme Court in New Jersey v. T.L.O., supra, 496 U.S. 325:
 ". . . Students at a minimum must bring to school not only the supplies needed for their studies, but also keys, money, and the necessaries of personal hygiene and grooming. In addition, students may carry on their persons or in purses or wallets such nondisruptive yet highly personal items as photographs, letters, and diaries. Finally, students may have perfectly legitimate reasons to carry with them articles of property needed in connection with extracurricular or recreational activities." (Id., at p. 339.)
Here, the students would not only be instructed to vacate their classrooms but also to leave behind their personal belongings. Would the physical separation of the pupils from their belongings constitute a "seizure" of the property under the Fourth Amendment? In Soldal v. Cook County (1992) 506 U.S. 56, 61, the court stated: "A `seizure' of property . . . occurs when `there is some meaningful interference with an individual's possessory interests in that property.' [Citation.]" (See Horton v. California (1990) 496 U.S. 128, 133; Arizona v. Hicks (1987)480 U.S. 321, 324; United States v. Jacobsen (1984) 466 U.S. 109, 113,120.) Moreover, "seizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place. [Citations.]" (Soldal v. Cook County, supra, 506 U.S. at p. 68.)
We have no doubt that separating the students from their personal belongings would constitute a "seizure" of property for purposes of theFourth Amendment. It would result in a meaningful interference with the students' possessory interests in their belongings. (See United States v. Place, supra, 462 U.S. at pp. 707-708 [separating personal luggage from immediate possession of person for purpose of arranging exposure to a narcotics detection dog constitutes a seizure of the property].)
However, the Fourth Amendment does not prohibit all searches and seizures, but rather only those that are "unreasonable." Even without the presence of consent by the person or a warrant based upon probable cause, a search or seizure may be found to be reasonable "if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present. [Citations.]" (United States v. Place, supra, 462 U.S. at p. 701.)
Determining whether a search or seizure is reasonable may require the weighing of various factors in balancing the privacy interests of the individual against the government's interests in conducting the search or seizure. (Soldal v. Cook County, supra, 506 U.S. at pp. 61-63; United States v. Place, supra, 462 U.S. at pp. 701-706; In re Williams G., supra, 40 Cal.3d at pp. 563-564.) The substantial privacy interests of students in their personal belongings while at school have been recognized and affirmed in several contexts. (See New Jersey v. T.L.O., supra, 469 U.S. at p. 339; B.C. v. Plumas Unified School Dist., supra, 192 F.3d at p. 1267; In re Williams G., supra, 40 Cal.3d at pp. 557-563.) The substantial interests of school administrators in preventing the presence of drugs and other contraband items on campus have also been recognized. (See Vernonia School Dist. 47J v. Acton, supra, 515 U.S. at p. 339; B.C. v. Plumas Unified School Dist., supra, 192 F.3d at p. 1268; In re Willimas G., supra, 40 Cal.3d at p. 564.)
In United States v. Place, supra, 462 U.S. 696, the court ruled that an investigative detention, consisting of a warrantless seizure of luggage at an airport on less than probable cause, was justified in light of the exigencies of the circumstances, including the inherently transient nature of drug courier activity at airports, and on the basis of reasonable, articulable suspicion, premised on objective facts, that the luggage contained items of contraband or evidence of a crime. (Id., at pp. 700-704.) Against the governmental interest which was found to be substantial (id., at pp. 703, 705), the court weighed the nature and extent of the intrusion upon the individual's Fourth Amendment rights (id., at p. 705). The court identified two specific criteria for consideration. First, was the seizure made from the immediate custody and control of the owner or after the owner had relinquished control to a third party? (Ibid.) Second, was the investigation confined to an on-the-spot inquiry, for example, immediate exposure to a trained narcotics detection dog, or was the property first separated and removed from the owner's control? (Id., at pp. 705-706.)
In the situation presented, the described procedure would be conducted on a random basis. Thus, no suspicion, individualized or otherwise, much less reasonable and articulable and premised on objective facts, would be present. Nor are any exigent circumstances suggested. Moreover, the property would be seized from the immediate custody and control of the students, who then would be physically separated from their personal possessions. Accordingly, even if the proposed procedure were limited to the investigation of backpacks and the like, the tenets of United States v. Place, supra, 462 U.S. 696, would provide no constitutional justification for the conduct in question. (See also In re William G., supra, 40 Cal.3d at pp. 564-566.)
In B.C. v. Plumas Unified School Dist., supra, 192 F.3d 1260, the court weighed the students' privacy interests against the school administrators' interests in deterring drug use on campus and concluded:
 ". . . There can be no dispute that deterring drug use by students is an important — if not a compelling — governmental interest. [Citation.] But the record here does not disclose that there was any drug crisis or even a drug problem at Quincy High in May 1996. [Citation.] In the absence of a drug problem or crisis at Quincy High, the government's important interest in deterring student drug use would not have been "`placed in jeopardy by a requirement of individualized suspicion.'" [Citations.] We therefore conclude that the random and suspicionless dog sniff search of B.C. was unreasonable in the circumstances. [Citations.]" (Id., at p. 1268, fn. omitted.)[3]
Similarly, here, no drug crisis has been identified at the high school by school administrators that would help support authorization of the proposed program.
In contrast, we find that in Vernonia School Dist. 47J v. Acton, supra, 515 U.S. 646, the court approved a school drug detection program that was limited to athletes, where (1) the school had an immediate crisis of drug abuse, (2) the crisis was fueled by the "role model" effect of the athletes' drug use, (3) drug use by the athletes posed substantial risk of immediate physical injury to the athletes, (4) the athletes voluntarily chose to play school sports, (5) the athletes had a lesser expectation of privacy than other students, and (6) the only punishment for drug detection was removal from the school's sports programs. (Id., at pp. 648-649, 657, 662-663.) Without these factors present, the court warned: "We caution against the assumption that suspicionless drug testing will readily pass constitutional muster in other contexts." (Id., at p. 665.) The procedures at issue, on the other hand, involve none of the factors found present in Vernonia.
In summary, implementation of the proposed policy would be random and without suspicion or probable cause. It would not be based upon a known drug crisis at the school. Application of the individualized suspicion requirement would not place in jeopardy the interests of school administrators. Accordingly, it would be unreasonable and thus unconstitutional under the federal Constitution and the California Constitution to separate the students from their personal belongings in order to have the belongings sniffed by drug detection dogs. (See United States v. Place, supra, 462 U.S. at pp. 705-706; B.C. v. Plumas Unified School Dist., supra, 192 F.3d at p. 1268; In re William G., supra, 40 Cal.3d at pp. 564-566.)
We conclude that school administrators at a public high school may not implement a policy requiring on an unannounced, random, and neutral basis that (1) pupils be directed to vacate their classrooms and leave behind their personal belongings, including backpacks, purses, jackets, and outer garments, for sniffing by canines trained in the detection of drugs, (2) the pupils would proceed to a location not within the immediate vicinity of the canines and would remain away from the canines at all times, and (3) if a canine's behavior indicated the presence of drugs, the pupil's personal belongings would be searched by the school administrators without the pupil's consent.
[1] The warrant clause of the Fourth Amendment states that ". . . no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
[2] The California Constitution's privacy guarantee operates separately and in addition to the Fourth Amendment's protections against unreasonable searches and seizures. References to California authorities appear herein as appropriate, to substantiate the state of the law in California. Citations of federal authorities alone are not indicative of the absence of California authority on the same subject, but rather of the absence of any known divergence between application of theFourth Amendment and California law that would necessitate discussion of California authorities. (See In re William G. (1985) 40 Cal.3d 550, 557, fn. 4.)
[3] The Plumas court did not determine whether a "seizure" (a meaningful interference with an individual's possessory interests in that property) had occurred presumably because the students' personal belongings were sniffed by the dogs both within their immediate presence and outside their presence — there was no need for school administrators to separate the students from their personal belongings and in fact the plaintiff student had taken all of his personal belongings with him. (Id., at p. 1269.)