HARRIS, Judge.
The police were called to the scene of a domestic dispute which involved a firearm, according to the reporting neighbor. When Teresa Lawrence was arrested for interfering with the officer’s investigation, she requested that the officer retrieve a “fanny pack” from her vehicle and give it to her husband. While we agree, as we are sure the trial judge would, that had the fanny pack been permitted to remain in the vehicle it would not have been subject to search as an incident of the arrest because the vehicle was not involved in this domestic violence incident, it was, in fact, removed from the vehicle pursuant to Lawrence’s request.
The question, then, is whether the fanny pack, once introduced into this still simmering domestic dispute in which a firearm was reportedly displayed, was subject to search by the officer as a safety precaution.
The trial judge carefully considered the facts and entered the following well reasoned order:
This cause having come on to be heard January 13, 1995, upon the Defendant’s Motion to Suppress and Motion to Dismiss and the Court being fully advised in the premises, the Court finds as follows.
Defendant moved to suppress cocaine, paraphernalia and cash seized from Defendant on the grounds they were obtained illegally and not incident to a lawful arrest. Defendant also moved to dismiss the charge of Resisting Without Violence on the grounds Defendant’s conduct was protected free speech and not the kind of unlawful conduct contemplated by Florida Statute 843.02. The pertinent facts established at the Hearing on these Motions are as follows.
Detective Callahan of Orange County Sheriff’s Office received a report of a domestic disturbance. The call was classified as a “Code Three” Call, one having a high priority because one of the individuals involved in the fight was reported to have a firearm. Detective Irizarry arrived on the scene as back-up to Detective Callahan.
Detective Callahan found at the scene three individuals, a man, a woman and an Hispanic male all standing in the front yard of the residence. The Detective learned the man and woman were husband and wife, that a domestic dispute had begun the night before, that the man had left the couple’s home as a result of the dispute taking the couple’s children with him, that he had spent the night at the residence of the Hispanic male and that the woman had arrived in the morning to pick up the couple’s children at which time the fight continued and was reported by a 911 call. The caller reported the presence of the firearm.
Detective Callahan assisted by Detective Irizarry frisked all three of the individuals. He found no firearm nor did any of the three appear to be injured in any way. While the Officers were attempting to interview the witnesses, the wife, the Defendant, was very agitated, yelling and screaming and interfering with the investigation Detective Callahan was attempting to conduct. Detective Callahan asked Defendant four times to stop interfering. At one point, she placed herself between the Detective and her husband as the Detective was trying to question the husband.
The Defendant acted so agitated, Detective Irizarry concluded she might be having a seizure akin to an epileptic fit, though Detective Callahan concluded the Defendant was not in need of medical attention but was rather just extremely agitated over the domestic dispute and the officers’ arrival on the scene. When the Defendant failed to comply with Detective Callahan’s instruction for the fifth time that she sit down and quit interfering with his attempts to question the husband, he arrested her for resisting an officer without violence.
At the time of this arrest, Detective Callahan and Detective Irizarry both acknowledged at the Hearing, no weapon had been found, neither the husband nor the wife had any visible injuries and they had *703 not at that point found any evidence a crime had been committed. Rather, Detective Callahan’s efforts were directed toward trying to quell the disturbance and mediate the domestic dispute, which it is undisputed had occurred. These efforts were motivated to some extent by the fact the couple’s children were on the premises (though not in the yard), according to Detective Irizarry.
Defendant was placed in handcuffs. At that point, she was still quite upset. She asked the Hispanic male if she could leave her truck parked in his driveway. She then asked Detective Irizarry to retrieve a black leather or leather-like “fanny pack” from the truck and give it to her husband as she did not want to leave it in the truck. The Detective testifies “for safety reasons,” he started to open one of the zippered compartments of the fanny pack to check it for weapons before passing it to Defendant’s husband. As one of the compartments was opened, the Officers could see a tube of aluminum foil rolled up and a large wad of currency rolled up in a cigarette box. Detective Callahan searched the pack further and also found a plastic bottle without a lid and a straw. The bottle also contained a razor blade. A substance which proved to be cocaine was packaged in a plastic bag, with foil and cellophane. Defendant was then charged with possession of cocaine and of drug paraphernalia in addition to the charge of resisting without violence.
At the Hearing, Defendant argued at the time of her arrest, she had not committed any crime nor had the Officers found a firearm or any evidence a crime had been committed. Having no lawful basis on which to arrest her, the fruits of the search of Defendant’s pack must be suppressed. Defendant cites S.D. v. State, 627 So.2d 1261 (Fla. 3rd DCA 1993) in support of her argument that her actions were protected free speech which should not have been cause for arrest.
Before determining whether the evidence seized must be suppressed, several issues must be considered. First, was the arrest of the Defendant proper? If the answer to that is yes, was the search of Defendant’s pack incident to the arrest legally authorized before the pack was passed to her husband? Though these facts present a somewhat close case, the court finds from the totality of the circumstances, the answer to both questions is yes.
Though at the time they arrested the Defendant, both officers testified they had not found a weapon or evidence of a crime, their investigation was continuing. At what point an actual “investigation” of a domestic dispute stops being an investigation and becomes more of as [sic] “mediation” is not susceptible to any fixed or brightline determination. These Officers were still on the scene doing what they determined in their best professional judgment was required by the circumstances. There is no question the Defendant was highly agitated and refused the Officer’s request to sit down and stay out of the way of their investigation on at least four occasions. This is quite different from the facts of S.D. v. State, supra. When she failed to comply with their requests and in fact placed herself between the Officer and her husband whom they were questioning, the Officers were justified in arresting her. The question then becomes whether, under these particular circumstances, the search of the fanny pack was legal.
Defendant argues all Officer Irizarry was authorized to do when asked by the Defendant to give her pack to her husband was to pass it to him unopened. In the absence of any evidence of a firearm on the scene or in the absence of Defendant’s consent, he could not open the pack, according to Defendant.
This Officer was faced with an on-the-scene determination of what is reasonable conduct when a highly agitated person under arrest in a case involving an allegation of the presence of a firearm asked him to pass a closed pack to the other party to the dispute. Any reasonable officer could be expected to check such a pack for weapons before delivering it. This is particularly so where, as here, the Officer was mindful there were children inside the house where the parents were arguing. The test is *704 whether a reasonably prudent officer would be warranted in the belief based on th[e] articulated facts that he is dealing with an individual who could be armed and dangerous. Terry v. Ohio, 480 U.S. 321 (1968) [sic].[1] Regarding the presence of a weapon, the officer is entitled to rely not just on Defendant’s assurances and a pat down of the person, but also on his own reasonable inferences from the facts. The facts here justified the search.
Defendant argues even if the arrest was justified, the scope of the search exceeded that which was necessary to eliminate the possibility of a weapon. Officer Callahan testified the presence of a weapon such as the fountain-pen size firearm could not be eliminated by simply feeling the unopened pack, however. In fact, a razorblade which could have been used as a weapon was found in the pack along with other drug paraphernalia. A reasonable officer when confronted with this situation would make a cursory search of the pack before delivering it to another. See Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). That the search revealed not a firearm but drug paraphernalia and cocaine is not a ground for suppression. See Harris v. State, 615 So.2d 727 (Fla. 5th DCA1993). It is hereby,
ORDERED AND ADJUDGED the Motions to Suppress and to Dismiss are both DENIED.
We agree with the trial judge that in this domestic situation in which emotions were running high, the officer was not only responsible for protecting himself from Mrs. Lawrence, but also for protecting Mrs. Lawrence (and himself) from Mr. Lawrence. Passing Mr. Lawrence a firearm would not meet that obligation.
AFFIRMED.
DAUKSCH and ANTOON, JJ., concur.

. The correct cite for this case is 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).