HARWOOD, Justice
(concurring specially).
I concur fully in the majority opinion. I write specially only to address an additional aspect of the case.
As the majority opinion notes, the police officers who responded to a burglar-alarm call at the residence of Mr. Shelby found signs of a forced entry; they therefore entered the residence to secure it and to make sure no intruder was inside. In the process, they saw in plain view what appeared to be marijuana and crack cocaine. After Mr. Shelby arrived and refused to consent to a “a thorough search of his residence for any other further drug evidence,” the premises were secured while the officers got a search warrant. After the search warrant was issued, law-enforcement officers searched the premises and, as the majority opinion notes, “[a]s a result of the search, Shelby was charged in a three-count indictment: one count of first-degree receiving stolen property and two counts of second-degree receiving stolen property.” Shelby filed a motion to suppress the evidence of the seized items that gave rise to those charges. In that motion he challenged the “hearsay” nature of the affidavit of Officer Robert Barlow (which is the basis on which the trial judge granted the motion, as addressed in his remarks from the bench, quoted in the main opinion), and he asserted that “there was evidence seized by the officers that was not contained in the search warrant,” which evidence “could not be viewed by any officer and determined to be illegal on its face.”
The record reveals that the items seized during the search, on which the stolen-property prosecutions are based, consisted of an “Apple [brand] Power Macintosh C.P.U. with keyboard and one Apple Multiple Stand Display Monitor,” a “Hitachi [brand] V.C.R.,” and “six cable filters.”
I have reviewed the record to determine whether these items, which are obviously not drugs, were specified in the search warrant or were authorized subjects of the search and seizure pursuant to some exception to the search-warrant requirement. In that regard I am mindful of the holding of the United States Supreme Court in Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). In that case, police officers entered an apartment to search for a person who had fired a gun into the apartment below; while in the apartment they seized three weapons and a mask. One officer noticed two sets of expensive stereo components and, suspecting that they were stolen, read and recorded the serial numbers and telephoned *317 those numbers to headquarters. He was advised that one of the items was stolen, so he seized it. Other serial numbers recorded were later connected with other stolen goods; and the other items subsequently were retrieved from the apartment pursuant to a search warrant. The State trial and appellate courts had held that the officer’s actions were not justified under the “plain-view” doctrine. The Supreme Court affirmed. The Court stated, however, that “[w]e agree that the mere recording of the serial numbers did not constitute a seizure.” 480 U.S. at 324, 107 S.Ct. 1149. The Court elaborated as follows:
“Officer Nelson’s moving of the equipment, however, did constitute a ‘search’ separate and apart from the search for the shooter, victims, and weapons that was the lawful objective of his entry into the apartment. Merely inspecting those parts of the turntable that came into view during the latter search would not have constituted an independent search, because it would have produced no additional invasion of respondent’s privacy interest. But taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent’s privacy unjustified by the exigent circumstance that validated entry. ... A search is a search, even if it happens to disclose nothing but the bottom of a turntable.”
Id. at 324-25,107 S.Ct. 1149 (citation omitted).
Because of the possible application of this rule in this case, I have reviewed the record to determine the circumstances surrounding the conclusion by the law-enforcement officers in this case that the above-listed items were stolen. I have done so because this Court will uphold the judgment of a circuit court, if that judgment is correct for any reason. Ex parte Williams, 571 So.2d 987 (Ala.1990).
The affidavit in support of the search warrant includes among its various recitations the statement that “drug traffickers often use computers” as a means of recording, sorting, organizing, etc., information concerning their activities. Among the items included in the subsequently issued search warrant as being subject to search and seizure were “computers, hard drives, monitors, key boards, printers, etc.” Shelby does not challenge the reasonableness or propriety of the inclusion of such items in the search warrant.
Additionally, Officer Barlow testified at the suppression hearing that the computer was “sitting on the kitchen bar/counter,” and that the rear of it and the “CPU”[1] and the monitor were all in plain view. He noted that the serial number had been removed from the CPU. Officer Barlow explained that the officers recorded the serial number of the computer because it was to be seized, and all items seized must be inventoried, with any affixed serial numbers listed.
Officer Barlow testified further that “[i]n the process of searching for drugs, you know, we search everywhere. Everything is overturned. Everything is moved because they could hide [the drugs] anywhere.” Through this process, officers saw serial numbers on other items and those numbers, along with the computer’s serial number, were reported to the police dispatcher who then ran them “through the NCIC[2] system.” Through the NCIC *318 check, officers determined that the computer and the VCR had been reported as stolen. Officer Barlow testified that there were a lot of VCRs, stereos, TVs, and “things like that” just lying around the residence, some in chairs, and that a car stereo was in a closet, which was “just a lot of equipment that one person — normally it is out of the ordinary for one family or one household to have this many items of the same, you know, description.” Also seized were the “six cable filters” previously mentioned; these were located throughout the house, “illegally installed on the back of the TVs.” Officer Barlow explained that this was an installation he recognized as being illegal and against the law.
Based on the fact that all of this information was developed at the suppression hearing, I do not believe the trial judge would have had any basis for granting Shelby’s motion to suppress under its alternative grounds that “there was evidence seized by the officers that was not contained in the search warrant” or that “the evidence seized by the law enforcement officers could not be viewed by any officer and determined to be illegal on its face.”
SEE, J., concurs.

. "CPU” probably means central processing unit.

. The National Crime Information Center (“NCIC”) operates a computer database that contains information on crimes committed in all of the states.