OPINION
Michael Stamper appeals from his conviction in the Greene County Common Pleas Court to theft of drugs pursuant to his no contest plea. In a single assignment of error, Stamper argues that the trial court erred in not suppressing the observations of a police officer which gave rise to his arrest for the offense for which he was convicted.
The facts underlying Stamper's arrest are set out in the trial court's decision overruling Stamper's suppression motion. They are as follows:
 "The officers testified that on May 17, 2001 at approximately 1:30 A.M., Officer Spangler observed three individuals walking across a field/lot at the intersection of Kemp, Grange Hall and Oxmoor Drive. Officer Spangler described these individuals as `appearing to be juveniles.' These individuals were walking toward and/or in the vicinity of several commercial establishments.
 "Pursuant to the Beavercreek curfew ordinance, which prohibits juveniles from being out after 12:00 Midnight, Officer Spangler stopped these individuals for questioning. Officer Cole responded to the location as back up to Officer Spangler.
 "In addition to the suspected curfew violations and the lateness of the hour, the officer's suspicion was peaked [sic] due to the fact that the [sic] had been a number of break-ins and theft offenses, approximately 7 to 10 in the area over the last several years.
 "The officers inquired of these individuals as to their identity, age and why they were in this location at this time of night.
 "Only one individual, Kevin Howard, had identification. Although these individuals indicated that they were not from Beavercreek, their stories as why they were in Beavercreek or where in Beavercreek they had been, were not consistent. Although the individuals indicated that they had been at a certain residence, they were unable to give a name of the person who resided in the residence or the location of the residence. One individual indicated that they had been at the residence of one of the individual's aunt, another indicator [sic] that they had been at the residence of a friend.
 "It was confirmed by Social Security numbers that all three of the individuals were adults and therefore, would not be in violation of the Beavercreek Curfew Ordinances.
 "Although this age determination was made, the officers still attempted to investigate the circumstances surrounding the situation. However, the testimony is uncontroverted that at no time were any of the individuals detained. The officers, under direct and cross examination, clearly indicated that these individuals were free to leave. It should be pointed out that at a certain point in time two of the individuals did leave when one of their parents arrived.
 "The testimony indicated that the officers understood that the only person who possibly could locate the residence at which these individuals previously visited was the Defendant.
 "The testimony further indicated that unlike the other two individuals, the Defendant did not elect or request to leave, but voluntarily agreed to go with the officer in his cruiser to locate this residence. No evidence to the contrary was presented.
 "Pursuant to police department policy, the Defendant was patted down prior to being placed in the backseat of the cruiser. The officer felt a large bulge made up of numerous items, some soft and some hard. The officer had concern that there may be a weapon among these items.
 "The officer seized the items in the Defendant's pocket and placed them on top of the vehicle.
 "After examining the items to determine if there was a weapon, the officer was in the process of returning the items to Defendant when he noticed that one of the items was a pill bottle in the name of another individual. The Defendant was then placed under arrest."
The trial court rejected Stamper's contention that it was improper for the officer to look at the prescription bottle label. The trial court noted the following:
 "The Defendant dwells on the fact that under questioning, the officer testified he purposely looked at the bottle labels. Although that fact is not in issue, the Court does not consider that purposeful look fatal for the State.
 "This Court would conclude that once the items making up the `bulge' taken from the Defendant's pocket were laid out on the automobile in the plain view of the officer, he had the authority to look at or identify the items, making sure they were not weapons, prior to their return. In looking at the items if the officer viewed a name on the prescription bottle such viewing is not improper unless there is evidence that the officer actually did something additional, such as opening, examining the item in detail.
 "There is no evidence before the Court that the officer did anything but look at the bottle. There was no evidence that the officer search [sic] or examined the bottle for a label and then read or reviewed the label.
 "The only evidence before this Court was that the officer looked at the bottle and when he looked at the bottle he saw a label with the name of another individual.
 "For the officer to look at a bottle in his plain view when he had a right to be in position to view the bottle is not a search beyond the scope or in violation of Defendant's constitutional rights.
 "In ruling, this Court is drawing a distinction different than that drawn by the Defendant.
 "The Defendant argues that since the officer testified he purposely looked at the bottle label when he knew it wasn't a weapon was beyond the scope.
 "The Court does not believe that the purposeful look at the bottle or bottle label is improper if the officer did so in the I.D. viewing conducted prior to returning the items to the Defendant unless it is shown that the officer did something more than look. The record does not contain such evidence.
 "The officer in this case removed items from the Defendant's pocket, looked at the items to determine if there were weapons and in so doing, observed a pill bottle which contained a name different from the Defendant.
 "The officer did not exceed the parameters of the `pat down' search. Defendant's Motion to Suppress is OVERRULED."
Our review of the testimony indicates that Officer Cole testified he placed the pill bottle on the roof of his cruiser prior to placing the defendant in his cruiser and as he was removing the pill bottle he glanced at it and observed the name of a woman from Beavercreek on the label. (Tr. 29). On cross-examination Cox admitted he purposely looked at the label of the pill bottle as he removed it from the roof. (Tr. 36).
In Harris v. United States (1968), 390 U.S. 234, the Supreme Court stated that "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." InArizona v. Hicks (1987), 480 U.S. 321, the Supreme Court held that the mere recording of the serial numbers did not constitute a "seizure" since it did not meaningfully interfere with respondent's possessing interest in either the numbers or the stereo equipment. The court held that the officer's actions in moving stereo equipment in order to locate serial numbers and determine if equipment was stolen constituted a "search."
In this case, the appellant does not contest Officer's Cole right to remove the prescription pill bottles from his pocket. He contests the officer's right to look at the bottle labels before removing them from the roof of the police cruiser. In other words, he essentially contends that the officer was bound to avert his eyes from the bottle labels as he removed the bottles from the top of his cruiser.
There is no suggestion that the pill bottle labels could not be easily seen as Cole removed them from the roof, and we would not require him to look away at the risk of knocking the bottles off the roof. In short, we believe Officer Cole's observations were made in "plain view" as that doctrine has been interpreted by the United States Supreme Court. We distinguish this case from State v. Chambers (January 27, 1983), Cuyahoga App. No. 45058 wherein the court suppressed drugs found when a police officer "looked inside a pill vial and saw a white powder," read the vial label and then arrested the defendant. The appellant's assignment of error is overruled.
The judgment of the trial court is Affirmed.
FAIN, J., and YOUNG, J., concur.