FILED
United States Court of Appeals
Tenth Circuit

November 4, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SHUN LAMAR BIRCH,

    Defendant - Appellant.

No. 10-1126

(D. Colorado)

(D.C. No. 1:09-CR-00053-WYD-1)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

A jury found Shun Lamar Birch guilty of being a felon in possession of a

firearm. *See* 18 U.S.C. § 922(g)(1). The evidence against him included firearms

that he had moved to suppress on the ground that they were seized in an unlawful

search. Although the United States District Court for the District of Colorado

expressed serious concerns about whether probable cause supported the search

warrant, it denied his motion, ruling that the good-faith exception to the

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

exclusionary rule applied.  Mr. Birch now appeals the denial of the motion to suppress.  We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.      BACKGROUND

On December 6, 2006, Kalonniann Clark was murdered in her home. Police officers found a footprint on the door of her home as well as .380 caliber shell casings and a 9mm slug and shell casings.  Recovered from her body was a 9mm bullet fired from the same weapon as the slug.

On November 19, 2008, a Denver County grand jury indicted Mr. Birch for the murder of Kalonniann Clark.  He was arrested that day by Denver police at 10001 East Evans Avenue, Unit 39-B, a townhouse where he was staying.

Later in the day Denver Police detective Jaime Castro applied for a search warrant for the Evans Avenue residence.  He sought male athletic shoes, .380 caliber and 9mm handguns, and other evidence of the murder**.**  His affidavit described the events on the night of the murder and the crime scene, including the bullet and shoe-print evidence that the police had found.  It stated that Mr. Birch, Brian Hicks, and Willie Clark had been indicted for the murder by a grand jury; that a confidential informant had stated that, shortly after the murder, the informant had seen Mr. Birch receive $4,000 of marijuana as partial payment for killing Kalonniann Clark; that Mr. Birch was arrested on December 13, 2006 (a week after the murder) for marijuana possession; and that Willie Clark had told Hicks (who was incarcerated) in a recorded phone conversation that Mr. Birch

had been arrested for possession of marijuana and that Clark had paid his bail bond. It further stated that surveillance officers had observed Mr. Birch living at the Evans Avenue townhouse and that he had given his address as 10001 East Evans Avenue on a report that he had filled out after a July 2008 traffic accident.

To support probable cause that evidence could be found at Mr. Birch's home, Detective Castro drew upon his 18 years of police experience. Based on that experience, he stated in his affidavit that conspirators to a murder continue to communicate after the crime, and with increased frequency when they learn of an investigation; that if some of them are incarcerated, as had been true of Hicks and Willie Clark since January 2007, they commonly communicate by mail; that shoes are not frequently discarded and are stored at home; that cell phones are used to store the names and phone numbers of associates; and that young male criminals frequently keep cell-phone pictures of themselves holding guns and other evidence of criminality (the affidavit gave Mr. Birch's birthdate as March 31, 1981). The affidavit also stated that Castro knew of at least one occasion on which a murderer had later been arrested with the firearm used in the crime.

Upon execution of the warrant, the police found a .45 caliber handgun and ammunition, two 12-gauge shotguns, and .40 caliber ammunition.[1] They also

---

[1]The district court determined that if the police were lawfully searching the townhouse, the weapons were in plain view. Mr. Birch does not challenge this conclusion on appeal.

seized 19 pairs of athletic shoes.  The weapons recovered resulted in the federal gun charges at issue here.

## II.    DISCUSSION

### A.    Probable Cause and the Good-Faith Exception

The Fourth Amendment requires probable cause to conduct a search in a criminal investigation.  *See Arizona v. Hicks*, 480 U.S. 321, 328 (1987) ("A dwelling-place search . . . requires probable cause").  Probable cause is "a fair probability that contraband or other evidence will be found in a particular place." *United States v. Biglow*, 562 F.3d 1272, 1281 (10th Cir. 2009) (internal quotation marks omitted).  In determining probable cause, magistrates may rely on the expert opinions of law-enforcement officers regarding where evidence might be kept.  *See id.* at 1279.

To enforce Fourth Amendment requirements, the exclusionary rule generally bars use of evidence obtained through a search or seizure that violates the Amendment, *see United States v. Leon*, 468 U.S. 897, 906–08 (1984), thereby deterring law-enforcement officers from violating it, *see id.* at 906.  Excluding the evidence, however, will not always have the desired deterrent effect.  In particular, the Supreme Court in *Leon* recognized that the exclusion of "reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate" does not serve the primary purpose of the Fourth Amendment exclusionary rule—deterrence of police misconduct.  *Id.* at 913.

Thus, *Leon* created the good-faith exception to the exclusionary rule, which allows evidence obtained in such circumstances to be used at trial. *See id.* at 922; *United States v. Gonzalez*, 399 F.3d 1225, 1229 (10th Cir. 2005) ("*Leon* established that evidence obtained pursuant to a warrant that is later found to be defective is not properly excluded when the warrant is relied on by the officers in objective good faith.").

This is not to say that the exclusionary rule never applies when officers execute a warrant issued by a magistrate. *Leon* noted four situations in which the good-faith exception would not apply because reliance on the warrant by the officers would not be objectively reasonable: (1) if the affidavit for the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; (2) if the issuing magistrate was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth"; (3) if the magistrate "wholly abandoned his judicial role"; and (4) if a warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." 468 U.S. at 923 (internal quotation marks omitted).

## B. Contentions on Appeal

On appeal Mr. Birch argues that Castro's affidavit failed to establish probable cause because it did not show why evidence of a two-year-old crime would be found at Mr. Birch's new residence. He further argues that the evidence

is not admissible under the good-faith exception, relying on the first two grounds for not applying the exception: (1) the lack of probable cause was so evident that it was unreasonable for the officers executing the warrant to believe that it existed, and (2) the magistrate who approved the warrant was misled by recklessly false statements in the affidavit.[2]

## C. Standard of Review

On appeal of a district court's decision on a motion to suppress, "we accept the [court's] factual findings unless they are clearly erroneous, and review questions of law de novo." *Gonzalez*, 399 F.3d at 1228. Whether the good-faith exception applies is a question of law that we review de novo. *See United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000). We need not decide whether a warrant was supported by probable cause if we determine that the good-faith exception applies. *See Gonzalez*, 399 F.3d at 1228. That is how we will proceed.

## D. Application of the Good-Faith Exception to this Case

We reject Mr. Birch's contention that the affidavit lacked sufficient indicia of probable cause to permit a reasonable police officer to believe that probable cause existed. First, the affidavit certainly provides probable cause to believe that Mr. Birch participated in the murder, and he does not really dispute this. *See*

---

[2]In his reply brief on appeal, Mr. Birch also briefly argues that the warrant failed to describe with sufficient particularity the items to be seized. We will not address this argument, however, because it was not raised in his opening brief. *See White v. Colorado*, 82 F.3d 364, 366 n.4 (10th Cir. 1996) (court need not consider argument raised for the first time in appellate reply brief).

*United States v. Windrix*, 405 F.3d 1146, 1153 (10th Cir. 2005) (grand-jury indictment provided probable cause to believe that defendants were involved in the crime). There is also no doubt that it provided probable cause to believe that Mr. Birch resided at the Evans Avenue address; he had listed that address on an accident-report form, and surveillance before the arrest had observed him arriving and staying at the townhouse. Thus, the principal question is whether there was reason to believe that Mr. Birch would maintain evidence of the crime two years later, in a home where he had resided only a few months.

The affidavit may not have established probable cause to believe that evidence of the murder could be found at Mr. Birch's new residence. But we reject his contention that it was entirely unreasonable for the officers to rely on the warrant. "Reliance is entirely unreasonable only if the affidavit submitted in support of the warrant is *devoid* of factual support." *United States v. Henderson*, 595 F.3d 1198, 1201–02 (10th Cir. 2010) (internal quotation marks omitted). "[W]e have held that good faith can be established so long as a minimal nexus exists between the place to be searched and the suspected criminal activity." *United States v. Roach*, 582 F.3d 1192, 1204 (10th Cir. 2009) (internal quotation marks omitted).

Perhaps Mr. Birch would wish to dispose of the murder weapon promptly after the murder; but if he did not do so, there would be no reason for him not to retain the weapon indefinitely. It makes little difference whether the search

occurred two weeks or two years after the murder, because the passage of time would not give Mr. Birch a greater motivation to get rid of the gun. *See United States v. Laury*, 985 F.2d 1293, 1314 (5th Cir. 1993) (applying good-faith exception but stating that probable cause to search home for instrumentalities of armed robbery still existed nearly two months after crime). And it would be reasonable to believe that he would retain the shoes worn during the murder, because he would be unlikely to fear that he left a shoe print on the door, and it would not be unusual to keep shoes for two years. Moreover, the affidavit stated that it was Castro's experience, as an officer and otherwise, that people do not frequently discard their shoes and that they keep the shoes at home. Similarly, it was not entirely unreasonable for the officers to believe that they would find at Mr. Birch's residence some communications between Mr. Birch and others implicated in the murder, cell-phone records and pictures, and documents showing that Mr. Birch had received money for his role in killing Kalonniann Clark.

Mr. Birch relies on *Gonzalez*, where this court refused to apply the good-faith exception. But in that case the affidavit contained no facts tying the defendant to the house searched and no explanation of why the affiant thought contraband would be found there. *See Gonzalez*, 399 F.3d at 1229–30. Unlike the affidavit in *Gonzalez*, the affidavit here made it clear that Mr. Birch lived at the Evans Avenue townhouse and provided reason to think that evidence of the murder would be located inside.

We also reject Mr. Birch's second argument—that the affidavit misled the magistrate because Castro knowingly or recklessly included false information in it. He points to the assertion in the affidavit that "Confidential Witness A stated that shortly after the homicide of Kalonniann Clark, Confidential Witness A was present when Shun Birch was given $4,000 dollars [sic] of 'high grade' marijuana as partial payment for killing Kalonniann Clark." R., Vol. 1 pt. 1 at 106. At the suppression hearing, Castro testified that the confidential witness had deduced or inferred that the marijuana was payment for the murder, but he had never been explicitly told that by Mr. Birch. In our view, the affidavit was not misleading. To begin with, it does not assert that the confidential witness quoted Mr. Birch as saying that the marijuana was a partial payment for the murder; rather, it says only that the witness so characterized the transaction, which was correct. More importantly, the witness statement did not affect the magistrate's assessment of probable cause; it was relevant only to whether Mr. Birch played a role in the murder, and there was no question that the affidavit (by referencing the indictment of Mr. Birch) established probable cause for that fact.

Mr. Birch also argues that the police misleadingly omitted details from the affidavit—in particular, it omits that during the surveillance of Mr. Birch, he had not been seen carrying a weapon or wearing shoes that matched the footprint on Kalonniann Clark's door. Again, however, the affidavit was not misleading. The affidavit revealed that officers had conducted surveillance of Mr. Birch; and the

-9-

magistrate (or any other reader) could assume that if anything additional had been observed that could be incriminating, the affidavit would have mentioned it. Moreover, as Detective Joel Humphrey testified, the unit charged with watching Mr. Birch before his arrest had never been told the details of the offense that Mr. Birch was suspected of, and had not been told about the particular importance of his shoes, so there would be no special significance in the failure of those officers to note that the shoes that they observed matched the footprint on the door.

## III. CONCLUSION

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge