DAMON J. KEITH,
concurring in part and dissenting in part.
I ■ concur in ■ part and dissent in part because the holding that James did not plead facts sufficient to demonstrate that the search of her office was unreasonable is based on a misapplication of the presumption of truth given to pleadings under the Federal Rules of Civil Procedure. Otherwise, I fully concur with Chief Judge Cole and his reasoning. As the majority opinion acknowledges, in reviewing a district court’s dismissal of a claim under Rule 12(b)(6), we are required to construe the complaint in the light most favorable to a plaintiff and accept all allegations as true. Keys, 684 F.3d at 608. The majority held that James had a legitimate expectation of privacy in her office but that the search of her office was reasonable in its inception because it was reasonable to suspect that her office might contain financial documents and evidence useful in Defendants’ investigation. I agree that the conclusion that the search was reasonable in its inception might be accurate but only if James had pleaded that her office was searched to further a legitimate investigation. James did not so aver.. James alleged in her complaint that Defendants initiated fraudulent claims against her to intimidate her and ultimately remove her from office. James further alleged that there was no proper purpose to search her office and that the investigation and search were, in fact, initiated for the express purpose of pushing her out of office. For the following reasons, I. find that these allegations sufficiently state an illegal search-of-office claim under the Fourth Amendment.
Although the Supreme Court recognized an exception in O’Connor to the Fourth Amendment’s protection against warrant-less and unreasonable searches and seizures, the exception is not without limits, limits that I believe apply to this case. As a starting point, O’Connor defined the workplace, stating that “[t]he workplace includes those areas and items that are related to work and are generally within the employer’s control ... [e.g.,] offices, desks and file cabinets, among other areas....” O’Connor, 480 U.S. at 715-16, 107 S.Ct. 1492. The court then held that if an employer searches the workplace area to which the employee does not have a legitimate expectation of privacy, there is *464 no constitutional violation. Id. If, on the other hand, an employer searches an area to which the employee has a legitimate expectation of privacy, to withstand constitutional rigor, the search must be reasonable in both its inception and scope. Id. at 717-18, 726, 107 S.Ct. 1492. O’Connor held that a search is only reasonable in its inception “when there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct.” Id. at 726, 107 S.Ct. 1492. To be reasonable in scope, a search must be “reasonably related to the objectives of the search and not excessively intrusive in light of the nature 'of the misconduct.” Id. (alterations in original) (citation omitted).
There is little room to dispute that James had a legitimate expectation of privacy in her office. This case turns on whether the alleged search of James’s office was reasonable, specifically whether it was reasonable in its inception. The majority concludes that Defendants’ proffered reason for searching James’s office justifies the search even though it is contrary to James’s allegations. The majority states, “It was reasonable to suspect that the judge’s office might contain financial documents and other evidence useful in an investigation, and James has not alleged any facts that suggest otherwise.” It is this disregard for the facts alleged in the complaint that leads directly to error, because the complaint does suggest otherwise. See United States v. Hamilton, 538 F.3d 162, 169 (2d Cir.2008) (reversible error when a district court fails to credit the facts asserted). James alleged that: (1) the search was conducted to remove exculpatory evidence and “alter[] Court documents to create the appearance of wrongful conduct” in order to create negative publicity that would lead to her removal; and, (2) this scheme was only concocted to remove a black judge from office who spoke against a political figure. James even asserted the name of a staff member who was allegedly coerced into searching her office and destroying her documents. James further alleged that other staff members were instructed not to assist her with her defense. And, she alleged that white judges who were under review by the JTC were treated less harshly than her because of race. These allegations are sufficient “factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. As further proof, James attached an affidavit to the complaint of an attorney who worked for both the JTC and Attorney Grievance Commission of the MSC. The affidavit says, “The treatment James has received by the JTC and MSC is unprecedented.”
Notably, the majority reaches all arguments, except the argument that Defendants created a ploy to remove a black judge from office and that searching her office was merely part of the scheme. To that end, the majority cites many cases, but none of these cases is instructive on the pleading standard required to challenge the purpose of a workplace search. Jackson is a case where we, interpreting the Ohio Constitution, held that the plaintiff failed to state a claim regarding the search of his office because he only alleged that “his office was sealed off, his professional and personal belongings were searched, and the locks on his office were changed.” 194 F.3d at 754-55. We held that “these facts do not establish that the search was unreasonable, unjustified in its inception, or unreasonably related in scope to the circumstances that prompted it.” Id. at 755. We did not state the extent of specificity that is required to state a claim for an unconstitutional search of an office. Gossmeyer, like Jackson, does not analyze *465 an instance when the purpose of the search is disputed. In Gossmeyer, the Seventh Circuit held that a reliable tip could support a workplace search. 128 F.3d at 491. The Fourth Circuit’s holding in Simons is also distinguishable because the employer’s justification for the search was not challenged. Simons held that the seizure of an employee’s hard drive was reasonable in its inception because the employer was already aware that the employee “had misused his Internet access to download over a thousand pornographic images, some of which involved minors.” 206 F.3d at 401 (citing O’Connor, 480 U.S. at 726, 107 S.Ct. 1492). Because the plaintiffs in the above cases did not allege facts challenging the justification of the searches, these cases are less instructive.
O’Connor, however, is directly instructive here given that the complaint sets forth a factual reason for challenging the constitutionality of the search of James’s office. There, the Supreme Court held that when the parties are “in dispute about the actual justification for the search, and the record [is] ... inadequate for a determination of [its] reasonableness[,]” summary judgment is inappropriate. O’Connor, 480 U.S. at 727, 107 S.Ct. 1492. If it is improper to grant summary judgment when the justification of the search is disputed, the same certainly holds true on a motion to dismiss standard when the allegations are taken as true and viewed in the light most favorable to a plaintiff.
While no court has specifically set forth the pleading standard required to sufficiently state a claim for an illegal workplace search, or as the majority would require, to challenge an employer’s reason for conducting a workplace search, there is case law discussing the unconstitutionality of searches conducted for personal reasons, unrelated to work. See generally Abbott v. Village of Winthrop Harbor, 205 F.3d 976, 982-83 (7th Cir.2000) (recording the personal telephone line of officer for personal reasons, unrelated to police work is unconstitutional). James unequivocally alleged that the search of her office was personal. She asserted that a defendant met with her and told her that the accusations, which Defendants argue warranted thé search, were political. Because the complaint, viewed in a light most favorable to James, compels the inference that there was no proper purpose to search her office, James did sufficiently state an illegal search-of-office claim under the Fourth Amendment.
Gossmeyer further emphasizes why James’s search-of-office claim is plausible as alleged. Gossmeyer held that a tip is reliable, even if anonymous, when the tip: (1) comes from a source who would have knowledge of the misconduct, (2) is serious and specific, and (3) specifically identifies where evidence of the misconduct can be found. See Gossmeyer, 128 F.3d at 491. Here, the information that Defendants argue prompted the search did not come from a reliable source, it came from Jones. The majority states that Jones’s grievance, which alleged abuse of office, justified the search. James alleged, however, that Jones was hired to disparage her in an effort to remove her from office and that filing a false charge was allegedly part of the scheme. James also alleged that Defendants worked collectively to achieve that common goal. The information Jones provided could not reasonably support a legitimate search because of his purported bias and alleged conspiracy to remove James from office. Secondly, the record is devoid of the details contained in Jones’s grievance. We only know that the grievance was based on abuse of office. We do not know what the grievance detailed. We do not even know if the grievance stated where evidence of misconduct could be found. The record does not support that *466 Jones’s grievance contained enough specificity to reasonably support a search. Thus, the majority errs in concluding that the search was reasonable based on Jones’s grievance because such a conclusion ignores that James alleged that Jones was part of the scheme and the record is lacking in detail.
Even if Jones’s grievance would have been a reliable basis to search James’s office, it could not support the search because it had gone stale. The majority reasons that the timeline of the investigation and search of James’s office is analogous to the investigation and search of the police chiefs office in Jackson. But, it is not. . In Jackson, the chiefs office was searched no more than a month after an investigation began and days after he was reassigned pending further investigation. 194 F.3d at 744. The search of James’s office occurred several months after Defendants’ investigation began and Jones’s grievance was filed. Jones was hired and began to investigate James in 2010. Jones’s investigation lasted months. Jones filed his grievance with the JTC in February 2011. While on leave and sometime after May 2011, James’s office and safe were searched. James alleged that on June 14, 2011, documents seized during the search were provided to the JTC, but she did not learn of the search until after it was completed. James alleged that, sometime before the JTC filed its complaint, she was allowed one hour to enter her office and retrieve items. When she entered her office, she found that “locks to her personal safe had been dismantled and that many of the documents that would be exculpatory were missing from her office and safe.” According to this timeline, the search was conducted roughly six months after the investigation began and at least three months after the grievance was filed. Therefore, it is not plausible to think that Jones’s grievance supported the ground for the search.
The majority, however, argues that the grievance was sufficient to justify the search of James’s office because “Attorney Jones had uncovered possible financial improprieties in the court’s management, which led him to file a grievance with the JTC.” Defendants hired an attorney to investigate James who, as the majority holds, discovered only the possibility of financial impropriety after a several-month long investigation. But, the possibility of misconduct is not the standard; there must be sufficient grounds to suspect the employee of work-related misconduct. Even considering that it were the standard, Jones’s uncovered possibility would not suffice because information about the grievance is lacking in detail. And, information about what possible financial improprieties Jones discovered is also lacking in detail. It is error to hold that a grievance, which we only know was based on abuse of office, is sufficient to suspect James of work-related misconduct.
The search of James’s office was, at best, a mere unauthorized fishing expedition. Shields, a case to which Gossmeyer distinguished its ruling, expressed more than doubt that “the sparse record did not establish the nature of the tip, the reliability of the informant, the extent to which the tip was corroborated, or any other facts which might have led investigators to suspect that Shields was involved in any misconduct[,]” Gossmeyer, 128 F.3d at 491 (citing Shields, 874 F.2d at 1204), as the majority’s main focus. The court was equally concerned that the search took place several months after the tip had been received. Id. Specifically, Shields cautioned that the delay between a tip and a search would create “an inference ... that instead of being based on reasonable grounds that the search would discover *467 relevant evidence, the search was merely a fishing expedition conducted with the hope that something would turn up.” 874 F.2d at 1204 (emphasis added); see also Shamaeizadeh v. Cunigan, 338 F.3d 535, 549 (6th Cir.2003).
According to James, the search was conducted with the hope to find her personal, exculpatory documents and destroy them. James alleged that the search was conducted no longer than one month after she and her attorney informed Defendants that there were personal documents in her office and safe. James alleged that during that meeting, she questioned, but was assured of, the safe keeping of her personal documents and privacy. She alleged that after that meeting, Defendants searched her office without her knowledge or consent, seizing exculpatory documents to thwart her defense. The above meeting took place in May 2011. Although the exact date of the search is not alleged, the James did allege that it occurred prior to June 14, 2011. Because the date of the meeting is in closer proximity to the search, it is plausible to believe that James’s alleged conversation with Defendants prompted the search of her office, not Jones’s grievance. If this is true, not only have Defendants been disingenuous about what prompted their search, the search was undoubtedly unjustified. For the above reasons and taking all of the allegations in the complaint as true, there are sufficient allegations which establish that the search was unreasonable at its inception. Accordingly, James sufficiently pleaded an illegal search-of-office claim under the Fourth Amendment.
Because James pleaded an illegal search-of-office claim, the search of her safe was also illegal for these reasons stated above as well as for those reason stated in the majority opinion. And, because the alleged search of office and safe were illegal, so was the seizure of documents within the office and safe. Although fourth-amendment cases sometimes refer synonymously to searches and seizures, “there are important differences between the two.” United States v. Giannetta, 909 F.2d 571, 578 (1st Cir.1990). Seizures refer to a retained interest in the possession of property, searches to personal privacy. Texas v. Brown, 460 U.S. 730, 747, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); see also Arizona v. Hicks, 480 U.S. 321, 328, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). O’Connor declined to decide the appropriate Fourth Amendment standard for seizures made pursuant to a warrantless workspace search, O’Connor, 480 U.S. at 729 n. *, 107 S.Ct. 1492 (“We have no occasion in this case to reach the issue of the Fourth Amendment reasonableness of seizures ■ ... [n]either the District Court nor the Court of Appeals addressed the issue -”), and neither need we. Because the alleged search of the office and safe were unconstitutional, so was the seizure of documents derived from the search. I respectfully concur in part and dissent in part.